ORDERED in the Southern District of Florida on June 13, 2007



John K. Olson, Judge
United States Bankruptcy Court

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

In re:

CANDACE CARLOW,

    Debtor.
_____/

CANDACE CARLOW,

    Plaintiff,
vs.

COLONIAL BANK, N.A.,

    Defendants.
_____/

Case No. 04-24984-BKC-JKO

Chapter 11

Adv. Pro. 06-1221-JKO

**ORDER DENYING MOTION FOR SUMMARY JUDGMENT**

When Colonial Bank acquired Union Bank of Florida, it also acquired the salacious claims which give rise to this litigation, in which the chapter 11 Debtor accuses her husband, Michael Carlow ("Michael") of maintaining illicit affairs with two different Bank employees who assisted him in looting her bank accounts of more than $500,000. The source of the funds was Accucare, LLC, a company run by Michael which sold counterfeit or otherwise tainted prescription drugs. Michael has already been convicted of the sale of illicit prescription drugs

and is currently held in CCA Leavenworth Detention Center in Leavenworth, Kansas. The Debtor is currently – and has been for some four years – under indictment on related charges. When her criminal case will finally come to trial is a matter of conjecture.

Against this backdrop of sex and drugs, Colonial Bank moves for summary judgment on two discrete points: first, that by invoking her Fifth Amendment right against self-incrimination during depositions in this adversary proceeding, the Debtor so impeded the Bank's ability to defend this action that the case must be dismissed with prejudice. Second, that by failing to give timely notice to Union Bank of the alleged forgeries and unauthorized transactions at issue, the Debtor failed in her duty toward the Bank under Article 4 of the Uniform Commercial Code. I conclude that summary judgment cannot be granted on either ground.

## Fifth Amendment issues

Colonial Bank deposed the Debtor twice, on May 26, 2006, and again on September 25, 2006. It is clear from the deposition transcripts that the Debtor invoked her Fifth Amendment right against self-incrimination only in response to questions which go to the heart of her criminal indictment or which in essence sought her confession to criminal conduct described in Florida Department of Law Enforcement investigative reports. The Debtor has an absolute right to invoke Fifth Amendment privileges against self-incrimination in this civil case. *Lekfowitz v. Cunningham*, 431 U.S. 801, 805 (1977); *McCarthy v. Arndstein*, 266 U.S. 34, 40 (1924); *Wehling v. Columbia Broadcasting System*, 608 F.2d 1084, 1086 (5th Cir. 1979).[1] She answered hundreds of questions directly relevant to the issues in this case, and declined to answer questions whose relevance to this case is at best tangential. The Bank advances the view that if the source of the funds in the Debtor's bank accounts was tainted, or the result of illegality by Accucare, then the Debtor has no claim against the Bank for how it acted with respect to those

---

[1] This case is binding precedent here under *Bonner v. City of Pritchard*, 661 F.2d 1206 (11th Cir. *en banc* 1981).

2

funds once they were entrusted to it. Although not stated quite so boldly, Colonial Bank is essentially arguing that it owes no duty to the Debtor with respect to funds in her bank accounts if the source of the funds was illicit. It thus argues that the Debtor's refusal to answer (relatively) few questions about the operations of Accucare and related matters wholly prevent the Bank from defending the UCC claim made against it in this case.

I view the issues of how the funds came to be in the Debtor's accounts, and how the Bank treated those funds thereafter, as entirely discrete questions. I do not understand how issues relating to the source of the funds provide Colonial Bank with a defense to the UCC Article 4 claims made against it, and I am unable to conclude that any such issues either preclude Colonial Bank from mounting its defense or justify the imposition of summary judgment dismissing the case with prejudice. I conclude that the Bank purposefully undertook to create a situation in which the Debtor, under indictment as she is, was compelled to assert her Constitutional rights against self-incrimination so as to give rise to a specious claim that the Bank was unable to defend itself. Because I view issues relating to the source of the funds as irrelevant to the UCC claims at issue, I conclude that the Fifth Amendment issue raised by the Bank cannot justify dismissal.

That is not to say that there are no consequences for the invocation of Fifth Amendment privileges in civil litigation. Here, Colonial Bank urges that dismissal of the case is the only available sanction because "discovery has proceeded, is closed and the parties are preparing to proceed to trial." The Debtor first invoked her Fifth Amendment privilege in May 2006, and again in September 2006, this latter occasion more than six months prior to the Bank's motion for summary judgment. The parties have spent the intervening months preparing for trial, including the retention of experts. As the Bank acknowledges in its summary judgment motion, a motion seeking dismissal of a civil case as a result of the invocation of Fifth Amendment

privileges must be timely made. It must also be the least draconian remedy available. The motion is not timely and the remedy is too harsh.

Discovery in civil case is governed generally by Fed.R.Civ.P. 26, made applicable to this adversary proceeding by Fed.R.Bankr.P. 7026, which provides in relevant part that "parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party." Relevant information "need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Colonial Bank has not brought anything to my attention which demonstrates that the information it sought from the Debtor as to which she invoked her Fifth Amendment privilege is itself relevant or that it would lead to the discovery of relevant information. Since the Bank has the burden to establish the relevancy of its discovery requests, *Dean v. Anderson,* 2002 U.S. Dist. LEXIS 11536 at *7 (D. Kan. 2002, Case No. 01-2599), citing *Steil v. Humana Kansas City, Inc.,* 197 F.R.D. 442, 445 (D. Kan. 2000), its failure to demonstrate relevance is fatal.

Moreover, there is something deeply troubling about the Bank's decision to wait ten months after the first invocation of the Debtor's privilege before raising the issue in its dispositive motion. Colonial Bank could have moved to compel at any time after the May 2006 deposition, and certainly after the September 2006 deposition, which would have brought the issues of relevance and prejudice to a head. The Debtor suggests that the Bank's delay in asserting the privilege invocation as a basis for dismissal is barred as having been waived and that the Bank is estopped by its delay and the Debtor's continuation of trial preparation from asserting that the case should be dismissed on these grounds. I conclude that the Bank's delay in raising the question means that the Bank has failed to seek relief by "timely motion," and that is thus barred from seeking dismissal on these grounds without reaching issues of waiver and estoppel.

4

The questions asked by Colonial Bank to which the Debtor invoked her Fifth Amendment privilege are not directly relevant to the UCC issues in this case. By definition, therefore, the Bank has not been prejudiced by the Debtor's invocation of her Fifth Amendment privilege. Even if the questions asked by the Bank had been relevant, however, a party is not prejudiced when the other party invokes Fifth Amendment privilege if the inquiring party is able to obtain relevant information elsewhere. *Faith v. Keefer,* 736 A.2d 422, 432 (Md. App. 1999) *citing, Federal Trade Comm'n v. Sharp,* 782 F.Supp. 1445, 1452 (D. Nev. 1991). Colonial Bank was able to obtain unfettered discovery regarding Accucare from its deposition of Michael at his Leavenworth prison. The Bank has not been prejudiced.

Finally, even if the Bank had been prejudiced by the Debtor's invocation of her Fifth Amendment privilege, and even if the Bank were not barred by its delay from so asserting, the remedy which it seeks – dismissal of this case with prejudice – is too harsh. Dismissal is appropriate only where other, less burdensome remedies are available. As the former Fifth Circuit held in *Wehling, supra,* 608 F.2d at 1088-89, a three year stay of civil proceedings where the plaintiff invoked the Fifth Amendment privilege would not impose an undue hardship on a defendant where the statute of limitations on plaintiff's claims had run. A stay of proceedings pending completion of the Debtor's criminal trial would have the same effect here were this a situation in which the Bank had been prejudiced. Since it was not prejudiced, no stay of these proceedings is necessary or appropriate.

### UCC Article 4 issues

Colonial Bank relies upon UCC § 4-406, *Florida Statutes* § 674.406, for the proposition that if a bank makes account statements available to its customer, the customer has a duty to discover and report any forgeries or unauthorized items to the bank in a timely manner. If the customer fails to examine the account statement and notify the bank, then the customer may be

5

barred from recovery for such items. The customer may still recover if the bank did not exercise ordinary care or acted in bad faith. The Bank here asserts that because the Debtor has allegedly not identified specific items which the Bank did not pay in good faith, the Debtor cannot recover. The Bank also asserts that the Debtor failed to complain within the short 180-day period provided for in the applicable version of *F.S.* § 674.406(6).

The Debtor did not complain within six months as to items cleared by the Bank. The Bank thus asserts that only if the Bank failed to pay identified items in bad faith could the Debtor recover. Since the Debtor has not identified such items with particularity, the Bank asserts, almost as a matter of mathematical proof, that the Debtor cannot prevail on any item.

The checks involved were issued between February 13, 2001, and July 11, 2003. Although Colonial Bank contends that "Union Bank provided copies of those checks to Ms. Carlow by mailing them, along with her bank statement to her home," the testimony from the Debtor is that she did not in fact receive the bank statements because her husband secreted them from her as part of his scheme to raid the bank accounts. Michael corroborated this testimony, and admitted that he arranged with his paramours at the Bank to stonewall the Debtor and to prevent her from obtaining copies of her bank statements and cleared checks.

There thus exists a genuine issue of material fact as to whether the Bank actually made the bank statements available to the Debtor such that she could have timely reviewed them and objected to improper items. Given testimony from both Michael and his paramours Jean McIntyre and Deborah Kelljchian that acknowledged their respective sexual relationships at a time when McIntyre and Kelljchian had control over the Debtor's bank accounts at Union Bank, and given Michael's acknowledgement that he had forged checks with the knowledge and acquiescence of his paramours, there also exists a genuine issue of material fact as to whether the Bank paid any such items in good faith.

6

Separate and apart from the questions as to whether the Bank actually made the bank statements available to the Debtor and whether the Bank paid the forged items in good faith is the question as to whether the Debtor exercised reasonable promptness in examining her bank statements. "The issues of whether a customer exercised reasonable care and promptness to examine the statement, and whether the customer had an opportunity to review the statement for a reasonable length of time, raise substantial questions of material fact ordinarily making summary judgment inappropriate." *Flagship Bank of Seminole v. Complete Interiors, Inc.*, 450 So.2d 337, 340 (Fla. 5th DCA 1984), *citing, Space Distributors, Inc. v. Flagship Bank of Melbourne*, 402 So.2d 586 (Fla. 5th DCA 1981). The question of when a plaintiff should have discovered a forgery is a question of fact. The statute of limitations defense under *F.S.* § 674.406(6) on which Colonial Bank relies in seeking summary judgment applies only where the owner actually received a statement of the contested items. *Aprile v. Suncoast Schools Fed. Credit Union*, 596 So.2d 1290, 1292 (Fla. 2d DCA 1992). The record before me is clear that there are genuine issues of material fact here which preclude the entry of summary judgment.

According to Michael's testimony, Union Bank employees McIntyre and Kelljchian knew about his forgeries on the Debtor's accounts and witnessed his acts of forgery. Thus, the trier of fact could conclude that Union Bank failed to exercise ordinary care in honoring items. Summary judgment for Colonial Bank on this issue is plainly inappropriate.

**Further proceedings**

Summary judgment is inappropriate in this case and Colonial Bank's motion will be denied. I have previously set this case for a status conference on June 18, 2007. At that conference, the parties should be prepared to advise me whether there are any other pretrial matters which need to be resolved or whether this adversary proceeding is now ripe for transmission to the District Court for trial pursuant to District Judge Altonaga's order

administratively closing Case No. 06-60510-CIV-ALTONAGA/Turnoff entered May 17, 2006 in the District Court and docketed here on May 22, 2007 as CP 41.

Based upon the foregoing, it is ORDERED that Colonial Bank's motion for summary judgment [CP 103] is DENIED.

###

Copies to:

Ben H. Harris, III, Esquire
Mark R. King, Esquire
Kenneth B. Robinson, Esquire
Mark S. Roher, Esquire

I:\ORDERS\06-1221-carlow.colonial.msj.2007.06.12.wpd